IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-00930-NYW-KAS

ANNA CECILIA MARIE SLAYTON,

    Plaintiff,

v.

BAYFIELD SCHOOL DISTRICT

    Defendant.
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Defendant Bayfield School District's **Fed. R. Civ. P. 12(b)(6) Motion to Dismiss Plaintiff's Amended Complaint (ECF 19) [#25]** (the "Motion"). Plaintiff, who proceeds as a pro se litigant,[1] filed a Response [#29] in opposition to the Motion [#25], and Defendant filed a Reply [#30]. The Motion [#25] has been referred to the undersigned. *See Memorandum* [#27]. The Court has reviewed the briefs, the entire case file, and the applicable law. For the reasons set forth below, the Court **RECOMMENDS** that the Motion [#25] be **GRANTED** and that Plaintiff's claims be **DISMISSED WITH PREJUDICE**.

---

[1] The Court must liberally construe a pro se litigant's filings. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). In doing so, the Court should neither be the pro se litigant's advocate nor "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

## I. Background

**A.    Factual Allegations**

From August 2022 through May 3, 2023, Plaintiff was employed as a paraprofessional by Defendant Bayfield School District. *See Am. Compl.* [#19] at 5, ¶ 1. She alleges that she has a disability, bipolar I disorder, and that she had "her first episode while working for the school" in February 2023. *Id.*, ¶ 2. She does not say what the episode entailed, but Defendant "accommodated her disability" by helping her "work through the problem" with the school counselor and "ma[king] room for her to get the proper help needed without incident." *Id.* Plaintiff had another episode on or about May 3, 2023, though she does not describe what it entailed. *Id.*, ¶ 3. This time, however, her supervisor "misrepresented [Plaintiff's] intent, wrote, and sent a resignation letter on her behalf[.]" *Id.* A few hours later, Plaintiff "went to the district office and stated she did not intend to resign and asked for her job back." *Id.* Defendant's human resources manager informed her that her paperwork had been processed, that she was no longer employed by Defendant, and that she would need to reapply if she wanted to work there again the following year. *Id.* Plaintiff believes she was discriminated against because of her disability in violation of the Americans with Disabilities Act ("ADA"). *Id.*

Plaintiff alleges that after she was terminated, "the Bayfield School District and multiple school officials retaliated against her using her children" by "faking a photo of plaintiff's nine-year-old son, a child with an autism diagnosis[.]" *Id.* at 6, ¶ 4. According to Plaintiff, "this photo was then submitted as an abuse allegation against [Plaintiff's] fiancé, Scott Warrington" to the La Plata County Human Services Department by "Intermediate Bayfield School Principal Amber Connet[.]" *Id.* Plaintiff levels multiple allegations against

2

Defendant and "school officials"[2], alleging that they "made up multiple additional defamations," "made a no trespassing threat," and "caused the Bayfield Marshall's office to call and threaten [P]laintiff's fiancé." *Id.* Plaintiff believes that "[t]his event occurred to[o] close to the plaintiff's firing to be anything other than retaliation as there never was any basis for a claim." *Id.*

Plaintiff lodges two ADA claims against Defendant: employment discrimination and retaliation. *Id.* at 5-6. She seeks reinstatement as a paraprofessional with front and back pay as well as "an explanation as to the real reason Amber Connet was forced to resign from her position as the Inter[mediate] School Princi[pal]" and "any and all physical evidence required to make a credible threat of trespassing against her fiancé[]." *Id.* at 8.

**B.    Procedural History**

On December 13, 2023, Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), though it included no details about any alleged post-termination "retaliation." *See id.* at 9.[3] On December 27, 2023, the EEOC issued Plaintiff a right to sue letter. *Id.* at 12. On March 21, 2024, Plaintiff mailed a copy

---

[2] Plaintiff's Statement of Claim includes a section titled "Additional Defendants" stating that "[o]nly the Superintendent or his designee makes final decisions in these kind of matters" before purportedly adding several individual defendants described only by their job description. *Am. Compl.* [#19] at 4. However, Plaintiff did not add these putative defendants to the case caption or to the "Defendant(s) Information" section and her allegations render unclear what each individual did, so these defendants are not yet proper parties. *Id.* at 1, 4; *cf., e.g.*, *Moore v. Johnson Cnty. Det. Facility*, No. 13-3109-SAC, 2013 WL 4402568, n.8 (D. Kan. Aug. 14, 2013) (advising pro se plaintiff that his amended complaint "must name every proper defendant in the caption of the complaint and again in its body, where he must also describe the personal participation of each defendant"); *see also Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) ("[A] district court might helpfully advise a *pro se* litigant that, to state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated.").

[3] Plaintiff's Charge of Discrimination and the EEOC Right to Sue Letter are both attached to her Amended Complaint [#19], so the three documents share a document number.

3

of her initial Complaint [#1] to Denver District Court after she called and spoke with that court. *Id.* at 7. The Denver District Court rejected the filing because the documents were captioned for this Court, and it instructed Plaintiff where to send them. *Am. Compl.* [#19] at 13. After discovering the error, Plaintiff immediately re-mailed her Complaint [#1] to this Court, but it was not received and filed until April 5, 2024. *Id.* at 13; *see Compl.* [#1]. Plaintiff admits that her Complaint [#1] was untimely. *Id.* at 7.

## II. Legal Standard

A Rule 12(b)(6) motion to dismiss tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). For a pleading to survive, the plaintiff must have pled sufficient facts which, when taken as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). In addition, the factual allegations must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S at 678. Additionally, documents attached to a complaint are considered part of the complaint for all purposes and the Court may consider them under Rule 12(b)(6). *See* Fed. R. Civ. P. 10(c); *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991).

Finally, the Court may consider affirmative defenses under Rule 12(b)(6) where facts establishing the defense are apparent on the face of the complaint. *Cf. Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018) (stating that "on occasion it

4

is proper to dismiss a claim on the pleadings based on an affirmative defense" but "only when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements") (citing *Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965) ("Under Rule 12(b), a defendant may raise an affirmative defense by a motion to dismiss for failure to state a claim. If the defense appears plainly on the face of the complaint itself, the motion may be disposed of under this rule.").

### III.  Analysis

Defendant moves to dismiss Plaintiff's claims under Rule 12(b)(6), arguing that Plaintiff's claim is barred because she filed her original Complaint [#1] outside the 90-day period mandated by the EEOC, and that Plaintiff has failed to state a prima facie case for either employment discrimination or retaliation under the ADA. *Motion* [#25] at 2, 10-11. Plaintiff admits that she filed her Complaint [#1] out-of-time in this Court but she asks the Court to equitably toll the deadline. *See Response* [#29] at 1-2.

The Court declines to consider the plausibility of Plaintiff's allegations because her failure to timely file a complaint within the EEOC's mandatory 90-day period is apparent from the face of her Amended Complaint [#19] and she has not shown that equitable tolling of the filing period is warranted under the circumstances.

**A.    Filing Deadline**

Title I of the ADA, which prohibits employment discrimination based on disability, incorporates the remedial procedures applicable to Title VII of the Civil Rights Act of 1964, including exhaustion of remedies. *Cf. Elwell v. Okla. ex rel. Bd. of Regents of Univ. of Okla.*, 693 F.3d 1303, 1309 (10th Cir. 2012) (citing 42 U.S.C. § 12117); *see also E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 285 (2002) (stating that "Congress has directed the

5

EEOC to exercise the same enforcement powers, remedies, and procedures that are set forth in Title VII" when it enforces ADA prohibitions against employment discrimination on the basis of disability).

Under Title VII, as incorporated into the ADA, the administrative remedy process begins with an aggrieved party filing a charge with the EEOC alleging that an employer engaged in an unlawful employment practice. 42 U.S.C. § 2000e-5(b). In a "deferral state" like Colorado, a charge of discrimination must be filed with the EEOC within 300 days of the challenged action. *Cf. Edmonds-Radford v. Sw. Airlines Co.*, 17 F.4th 975, 988 (10th Cir. 2021) (citing *Castaldo v. Denver Pub. Schs.*, 276 F. App'x 839, 841 (10th Cir. 2008); 42 U.S.C. § 12117(a)). Once a charge is filed, the EEOC investigates it and has "exclusive jurisdiction over the claim for 180 days." *Waffle House*, 534 U.S. at 291; *see also* 42 U.S.C. § 2000e-5(f)(1). Under current regulations, if the EEOC decides to dismiss a claim, it issues written notice of that decision along with a "notice of rights informing the person claiming to be aggrieved . . . of the right to sue in Federal district court within 90 days of receipt of the determination." 29 C.F.R. § 1601.18(b); *see also* 42 U.S.C. § 2000e-5(f)(1). This notice is commonly known as a "right to sue" letter. *Waffle House*, 534 U.S. at 291.

A would-be ADA plaintiff has 90 days after receiving her right to sue letter to bring a civil action. 42 U.S.C. § 2000e-5(f)(1) (outlining filing deadlines for Title VII claims); 42 U.S.C. § 12117(a) (providing that Title VII deadlines apply to ADA claims). This filing period functions like a statute of limitations but it is not a jurisdictional prerequisite. *See Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018) (abrogating prior precedent and holding that "a plaintiff's failure to file an EEOC charge regarding a discrete employment incident merely permits the employer to raise an affirmative defense for

6

failure to exhaust but does not bar a federal court from assuming jurisdiction over a claim."). If the date of receipt is unknown or disputed, the Tenth Circuit has recognized either a three-day or five-day mailing presumption in various circumstances. *See, e.g., Lozano v. Ashcroft*, 258 F.3d 1160, 1164-65 (10th Cir. 2001) (noting that the Tenth Circuit has "implicitly sanctioned applying either a five-day or a three-day [mailing time] presumption") (citations omitted); *Landrum v. Wakefield & Assocs., Inc.*, No. 08-cv-0283-CVE-PJC, 2009 WL 523104, at *2 (N.D. Okla. Mar. 2, 2009) (considering and applying three-day and five-day presumptions under Fed. R. Civ. P. 6(d) and common law, respectively, upon noting that the Tenth Circuit has not expressed a preference for either presumption).

Here, the untimeliness of Plaintiff's filing is apparent on the face of her Amended Complaint [#19]. The EEOC issued her a right to sue letter on December 27, 2023. *Am. Compl.* [#19] at 12. Plaintiff does not say when she received the letter, but even applying the more generous five-day presumption, she received it by January 2, 2024,[4] at the latest. The letter clearly states that "**your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice**." *Id.* (emphasis in original). Ninety days from January 1, 2024, fell on Monday, April 1, 2024, but Plaintiff did not file her Complaint [#1] until April 5, 2024. The Court finds—and Plaintiff admits—that she filed suit outside the 90-day filing deadline. *See Am. Compl.* [#19] at 8. However, the Court's inquiry does not end here.

---

[4] Five calendar days from December 27, 2023, is January 1, 2024, a legal holiday. Pursuant to Fed. R. Civ. P. 6(a)(1)(C), the five-day period continues to January 2, 2024.

**B.      Equitable Tolling**

Equitable tolling "pauses the running of, or 'tolls,' a statute of limitations" under certain circumstances. *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014). However, such relief is granted sparingly. "Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded out of vague sympathy for particular litigants." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984); *see also Lozano*, 572 U.S. at 10 (observing that "the [equitable tolling] doctrine effectively extends an otherwise discrete limitations period set by Congress" and, therefore, warrants careful consideration of statutory intent).

To that end, federal courts will equitably toll deadlines only in rare circumstances, such as "where [the plaintiff] has actively pursued [her] judicial remedies by filing a defective pleading during the statutory period, or where the [plaintiff] has been induced or tricked by [her] adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990) (citing *Brown*, 466 U.S. at 151). On the other hand, where a plaintiff fails to exercise due diligence in preserving her legal rights or misses a deadline due to excusable neglect, courts are much less forgiving. *See id.* ("[T]he principles of equitable tolling described above do not extend to what is at best a garden variety claim of excusable neglect.").

In the context of Title VII, from which the ADA borrows filing periods, the Tenth Circuit has endorsed equitable tolling only where circumstances "rise to the level of active deception which might invoke the powers of equity to toll the limitations period." *Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002) (citing *Cottrell v. Newspaper Agency Corp.*, 590 F.2d 836, 838-39 (10th Cir. 1979)). "Equitable tolling might be appropriate, for

example, where a plaintiff has been 'lulled into inaction by her past employer, state or federal agencies, or the courts.'" *Montoya*, 296 F.3d at 957 (quoting *Carlile v. S. Routt Sch. Dist.*, 652 F.2d 981, 986 (10th Cir. 1981)). "'Likewise, if a plaintiff is actively misled, or has in some extraordinary way been prevented from asserting his or her rights, [a court] will permit tolling of the limitations period.'" *Montoya*, 296 F.3d at 957 (quoting *Martinez v. Orr*, 738 F.2d 1107, 1110 (10th Cir. 1984)). Ultimately, "[t]he application of equitable doctrines" such as equitable tolling "rests in the sound discretion of the district court." *Arnold v. Air Midwest, Inc.*, 100 F.3d 857, 861 (10th Cir. 1996).

Here, Plaintiff makes several unpersuasive arguments in urging the Court to equitably toll the 90-day filing deadline. First, Plaintiff argues that she "mailed to the court the original filing on March 21, 2024, six days before the 90-day deadline." *Response* [#29] at 1. However, she admits that she mailed it to the wrong court, and the letter from Denver District Court explains why it was rejected: all her documents were captioned for federal court, not state court. *See Am. Compl.* [#19] at 13; *Compl.* [#1] at 1 (captioned "In the United States District Court for the District of Colorado"). Plaintiff's mistake in sending her Complaint [#1] to the wrong court—when the correct court was clearly identified on the very first page of the document—was not caused by active deception or extraordinary circumstances.

Second, Plaintiff suggests that her pro se status should entitle her to additional leeway. *Response* [#29] at 1. However, the Tenth Circuit has expressly held that a plaintiff's pro se status does not excuse her from following procedural rules. *See Montoya*, 296 F.3d at 958 (affirming the district court's finding that a pro se plaintiff's "difficulties are those faced by many plaintiffs who nonetheless manage to file suit in a timely manner");

9

*see also Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (emphasizing that pro se litigants must follow the same rules of procedure that govern other litigants). Plaintiff's pro se status does not warrant equitable tolling.

Third, Plaintiff claims that she was misled as to where to send her Complaint [#1] and how long it would take to arrive. *Response* [#29] at 1-2. She claims that Denver District Court staff incorrectly told her where to send her Complaint [#1], which caused her to mail it to that court instead of this Court. *Response* [#29] at 1. However, she does not say with whom she spoke or what they told her to do, and without those details the Court cannot find that she was actively deceived or lulled into inaction.[5] Plaintiff also claims that she spoke to a local postmaster who told her that her "original filing" would take "no more than three business days to arrive." *Response* [#29] at 1. However, Plaintiff's argument fails for two reasons: First, as previously discussed, Plaintiff's Complaint [#1] was untimely even under the more generous five-day mailing presumption. Second, even if Plaintiff's "original filing" took three days to arrive, she sent it to the wrong address. Plaintiff has not shown that her conversations with either Denver District Court staff or the postmaster involved actual deception, lulled her into inaction, or actively misled her in some extraordinary way. *See Montoya*, 296 F.3d at 957. Plaintiff's confusion does not rise to the level of deception required in this Circuit.

Finally, Plaintiff argues that the excusable neglect theory covers mistakes beyond a party's control. *Response* [#29] at 2. However, even if the Court found that Plaintiff's mistake in filing in Denver District Court was the product of excusable neglect—and it

---

[5] For example, if Plaintiff simply asked Denver District Court staff for that court's mailing address, they may not have misinformed her at all. She seems to think that court staff should have known that she was about to mail her document to the wrong court and should have stopped her from doing so, which is an unreasonable expectation.

10

may well have been—that would not warrant equitable tolling. *Cf. Irvin*, 498 U.S. at 96 ("[T]he principles of equitable tolling described above do not extend to what is at best a garden variety claim of excusable neglect."); *Montoya*, 296 F.3d at 958 (finding that pro se plaintiff's "garden variety claim of excusable neglect" was "unworthy of meriting equitable tolling").

In summary, Plaintiff admits that she filed her Complaint [#1] more than 90 days after receiving an EEOC right to sue letter and she has not shown that equitable tolling of that deadline is warranted. Because both of her claims, discrimination and retaliation, are stated under the ADA, her failure to file within the 90-day filing deadline requires dismissal of her claims. Because the untimeliness of Plaintiff's Complaint [#1] cannot be cured, the Court **recommends** that Plaintiff's claim be **dismissed with prejudice**. *See, e.g.*, *VanHorn v. U.S. Postal Serv.*, No. 21-1067-DDC-GEB, 2022 WL 226276, at *5 (D. Kan. Jan. 26, 2022) (dismissing with prejudice claims that were filed after the 90-day filing period with prejudice "[b]ecause those claims are untimely and plaintiff can't assert them again"); *D.L.F. v. Kijakazi*, No. 21-2243-SAC, 2021 WL 5492912, at *2 (D. Kan. Nov. 22, 2021) (dismissing time-barred complaint with prejudice); *see also Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1271 (10th Cir. 2001) (finding that a dismissal of an untimely filed claim without prejudice was, "in real world terms," a dismissal *with* prejudice because "any attempt by [the plaintiff] to refile her claims . . . would be out of time").

## IV.  Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that the Motion [#25] be **GRANTED** and that Plaintiff's claims be **DISMISSED WITH PREJUDICE** for failure to file within 90 days of receiving an EEOC right to sue letter.

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: December 4, 2024                                     BY THE COURT:

                                                                                    Kathryn A. Starnella
                                                                                    United States Magistrate Judge